**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Ross Joseph STRADA, Defendant.**

**Crim. A. No. 22676-3.**

United States District Court,
W. D. Missouri, W. D.

April 10, 1974.

See also, 8 Cir., 503 F.2d 1081.

Gary Cornwell, Sp. Atty., Dept. of Justice, Kansas City, Mo., for plaintiff.

James P. Quinn, Kansas City, Mo., for defendant.

## SUPPLEMENTAL MEMORANDUM TO ORDER REVOKING PROBATION OF DEFENDANT CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM H. BECKER, Chief Judge.

This memorandum supplements the order heretofore entered revoking probation of the defendant.

### The State Sales Use Returns

On July 11, 1968, this defendant, charged in a multiple count indictment, entered a plea of guilty to one count charging a violation of § 1084, Title 18, U.S.C., prohibiting the unlawful transmission of betting information. The remaining counts were later dismissed at the time of sentencing.

After receipt and summary of a pre-sentence report and after being accorded allocution, the defendant was committed to the custody of the Attorney General under the second paragraph of § 3651, Title 18, U.S.C., for a period of two years with provisions that (1) the defendant be confined in a jail type or treatment institution for a period of six months; and (2) the execution of the remainder of the sentence be suspended and the defendant placed on probation for a period of five years to begin on his release from confinement to custody under that sentence.

The terms of probation were the usual conditions and a special condition that the defendant "not during the period of his probation associate with or be employed by Anthony Civella, Corky Civella, Augustus Faconi [sic], Nick Civella or any person reported to be engaged in illicit criminal activities."

Because of the findings and conclusions set forth hereinafter, the legality and terms of the special condition are not material to the order of revocation of probation.

The defendant was released from the custody of the Attorney General on March 28, 1969, when the service of the six month period of custody was completed. On March 31, 1969, the defendant was advised orally and in writing of the conditions of probation by the Probation Officer to whom supervision of the defendant was assigned.

On November 28, 1973, the counsel for the United States filed herein a motion for an order of arrest and to show cause why "defendant's sentence of probation should not be revoked." This was ultimately treated as a motion for revocation of probation. No order for arrest of defendant was issued, although the motion therefor was orally renewed. After prehearing procedures including a written response by defendant through his counsel, mutual discovery, and a written stipulation of uncontroverted facts by the parties, a formal evidentiary hearing was held at which defendant ap-

peared in person and by counsel contesting the motion on its merits.

The usual conditions of probation of defendant were as follows:

"(1) You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.

"(2) You shall associate only with law-abiding persons and maintain reasonable hours.

"(3) You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. When out of work you shall notify your probation officer at once. You shall consult him prior to job changes.

"(4) You shall not leave the judicial district without permission of the probation officer.

"(5) You shall notify your probation officer immediately of any change in your place of residence.

"(6) You shall follow the probation officer's instructions and advice.

"(7) You shall report to the probation officer as directed."

The special condition has been stated above.

### The State Law Violations

One of the conditions of probation was that the defendant should violate no state law. The evidence in support of the motion for probation proves not only by a preponderance of the evidence but also beyond a reasonable doubt that the defendant violated state law in two respects.

■ As proprietor of the Villa Capri Restaurant, 2609 Independence Avenue, Kansas City, Missouri, defendant wilfully, knowingly, and personally subscribed and filed or caused to be filed, Missouri Combined Sales and/or Use Tax Returns falsely understating gross sales for the following calendar quarters:

(1) First Calendar Quarter of 1970
(2) Second Calendar Quarter of 1970
(3) Third Calendar Quarter of 1970
(4) Fourth Calendar Quarter of 1970
(5) First Calendar Quarter of 1971
(6) Second Calendar Quarter of 1971
(7) Fourth Calendar Quarter of 1971.

The subscribing and filing of or causing to be filed each of the foregoing quarterly returns was a separate violation of state criminal law, § 144.490, Chapter 144, RSMo, V.A.M.S. For each such separate violation independently it is concluded that the probation of the defendant should be revoked.

In making the foregoing findings of fact the rules of evidence have not been relaxed to consider hearsay evidence inadmissible in conventional criminal actions. Only admissible evidence has been considered. In this connection it became necessary to rule upon defendant's motion to suppress the state sales/use tax returns in question (P.Ex. 1 to 8 inc.). The authenticity of the returns is established but the defendant contends in substance that the returns are inadmissible and should have been suppressed because § 144.120, RSMo, V.A.M.S., makes the returns confidential and therefore inadmissible; that the acquisition of these returns by the government through the use of a federal grand jury subpoena was itself unlawful under § 144.120, RSMo, V.A.M.S.

Section 144.120 as it read during the time the returns were filed, and the time they were acquired by federal grand jury subpoena is as follows:

"144.120. *Content of returns, confidential*

"1. It shall be unlawful for any person, persons or officers to divulge, give out or impart to any other person or persons any information relative to, or the contents of, any return filed under this chapter, or to permit any other person or persons not connected with his office to see, inspect or examine the same; and it shall be

unlawful for any person or officer to use any return filed under this chapter in any manner whatever in connection with or for the purpose of assessing property tax or determining the amount of property assessment of any person or corporation, or to use the same in any way in making up any property assessment roll.

"2. It shall be unlawful for the director of revenue, or his deputy, agent or clerk to in any way permit the inspection of any such return or to use the same in any way in making assessments other than the assessment of the tax provided for in this chapter, and any person violating the provisions of this section shall be deemed guilty of a misdemeanor; provided, however, that this section shall not prohibit the director of revenue nor any agent, clerk or inspector from giving evidence in court in any proceeding brought to collect any tax due hereunder, or to punish any person for the making of false or fraudulent returns or providing other state agencies, other states, the Multidistrict Tax Commission or the federal government with information which will aid in the collection of taxes or other revenue due or payable the state of Missouri, another state or the federal government. As amended Laws 1961, p. 630, § 1."

■ There are three reasons why the defendant's motion to suppress the returns should be denied and the returns deemed admissible. They are as follows:

1. The statute by its express terms does not attempt to prevent disclosure of the returns to the federal government, or their use in any proceeding to punish any person for false and fraudulent returns.

2. The federal judicial system should not recognize any state rule of confidence which is unaccompanied by a cogent recognized state interest and the recognition of which will frustrate the adminis-

tration of justice in the federal courts.

3. In the absence of a federally recognized immunity to discovery and use in evidence, the acquisition by federal authorities of the possession of the returns by voluntary surrender of the filed returns by the lawful state custodial officer in response to a lawfully issued federal grand jury subpoena, is permissible.

Therefore, the motion of the defendant to suppress the returns in question is without merit and denied. The returns have been deemed admissible in evidence.

### The Unauthorized Electrical Connection

■ The evidence on the issues of responsibility for, and criminal intent of the defendant in connection with, an unauthorized connection with a source of electricity for defendant's restaurant in 1973 is insufficient to prove by a preponderance of the evidence that defendant violated any criminal law.

While the evidence clearly establishes that defendant, as the proprietor of the Villa Capri Restaurant on Independence Avenue, was the beneficiary of a valuable unauthorized electrical supply in April and May 1973, under suspicious circumstances, the proof does not establish the defendant's guilt of violation of the state laws relied on by the government. Section 560.300 and Section 560.305, RSMo, V.A.M.S.

### The January 27, 1971 Encounter With Officers of the Kansas City Police Department

The testimony of Police Officers Divilbiss and Weddle of the Kansas City Police Department, establishes beyond a reasonable doubt that in the early morning of January 27, 1971, the defendant attempted to interfere with the arrest of one O'Brien and resisted arrest personally.

In the early morning of January 27, 1971, at about 2:30 A.M., the attention of Kansas City Police Officer Divilbiss, who was alone in a police patrol car, was attracted to a traffic violation by the driver of an automobile weaving from the emergency stopping lane to the driving lanes on Interstate Highway 70 in Kansas City, Missouri. Officer Divilbiss caused the vehicle with three occupants to stop by using his siren and flashing light. Officer Divilbiss stopped the patrol car behind the vehicle to the left rear. Officer Divilbiss then approached the vehicle and asked the operator to step from the vehicle. When the operator, one O'Brien, stepped from the vehicle, Officer Divilbiss smelled alcohol on O'Brien's breath, and secured O'Brien's driver's license. At Officer Divilbiss' invitation O'Brien entered the patrol car with the officer. After a discussion the officer informed O'Brien that he was under arrest for driving under the influence of intoxicating liquor. O'Brien said that the officer could not arrest him, and tried to get out of the car. The officer tried to hold O'Brien in the police car by his arm. Then O'Brien put his right arm under his sports coat reaching for his belt line. The officer had been told before this incident that O'Brien should be watched because of difficulty another officer had with him and because of the bad reputation of his associates.

Fearing that O'Brien was reaching for a firearm, Officer Divilbiss struck O'Brien a damaging blow on the mouth, leaped out of the car and succeeded in putting O'Brien in the search position on the right side of the patrol car, preparing to search and handcuff O'Brien. As the officer was attempting to handcuff O'Brien, the defendant, a passenger in the vehicle driven by O'Brien, came out and approached the front of the patrol car. Then O'Brien began struggling again. When the defendant reached the rear of the car he had been in, Officer Divilbiss drew his revolver. The defendant continued to approach, making derogatory remarks about the police.

Then Officer Divilbiss pointed the revolver at the defendant and three or four times ordered the defendant to stop. The defendant finally stopped about four feet from the officer who completed handcuffing O'Brien and called on the radio for assistance. Between three to five minutes later two other officers arrived. Then Officer Divilbiss was holding the defendant at gun point. The two officers went to place handcuffs on the defendant, who began resisting by struggling, cursing and telling the officers he could whip them and would kill them if they took the handcuffs off.

The defendant appeared to be "fairly well intoxicated." Because of his struggling two officers were required to take him back to the last vehicle, a patrol wagon which had arrived on the scene. Sergeant Weddle was one of the officers who arrived on the scene. Officer Divilbiss filed a report and charge that O'Brien and defendant resisted arrest and that O'Brien drove under the influence of intoxicating liquor. The charges against the defendant were dismissed in the Municipal Court at the request of the Attorney for the Police Board, after complaints of the actions of Officer Divilbiss and apparently a threat of suit by O'Brien and perhaps by defendant. Regardless of the merits of O'Brien's complaint that the officer struck him unnecessarily, defendant was intoxicated and forcibly resisted arrest. This was a violation of state and municipal law, intended to deter criminal misbehavior. Section 26.35 and Section 26.-10, Ordinances of Kansas City. The Kansas City Police Department is constituted by state laws administered by a Board of Police Commissioners appointed by the Governor of Missouri. Chapter 84, § 84.350 et seq. The police officers of Kansas City derive their powers of arrest from state law. Section 84.440, V.A.M.S., and cases cited in the annotation thereto. The resistance of arrest by defendant and attempted interference with the arrest of O'Brien were violations of state law as well as of

ordinances adopted pursuant to the Constitutional Charter of Kansas City. Sections 26.10 and 26.25, Ordinances of Kansas City. Under federal law probation may be revoked upon proof of such violations whether there is a municipal or state prosecution or conviction. Therefore, with respect to the violations of law occurring in the early morning of January 27, 1971, it is concluded that an independent ground for revocation of probation exists and that probation should be revoked for this ground.

### Violation of the Special Condition

 Alleged violation of the special condition prohibiting personal associations is not considered to be a ground for revocation of probation of defendant for many reasons.

The principal reason is that the special condition was to say the least, unwisely imposed in that it discriminatorily singled out certain persons by name and assumed that there would be a degree of guilt in associating with them.

The purpose in recommending the special condition for judicial incorporation in the conditions of probation was to emphasize the bad associations, thought but not proved to be a cause of defendant's troubles in the past. The general conditions were sufficient to prohibit harmful and unlawful personal associations.

In retrospect the inclusion of the special condition was a mistake and will hereby be vacated *nunc pro tunc*. Therefore, its alleged violation cannot constitute a basis for revocation of the probation of the defendant.

Furthermore, the probation officer supervising the defendant on probation, approved the purchase by defendant of a restaurant catering to the public as a public accommodation. Under these circumstances the defendant could not lawfully refuse to serve any of the persons named in the special condition. While in his restaurant gave to at least one of the persons named in the special condi-the evidence shows that the defendant

tion companionship and unusual hospitality not required by a public accommodations law or by business purposes, this is not deemed to be sufficient to warrant revocation of probation under any of the general conditions.

### The Remaining Alleged Grounds

There are a few other grounds asserted by the government as grounds for revocation of probation. It is found and concluded that these other grounds, considered separately and jointly, do not warrant revocation of probation.

For the foregoing reasons, it was

Ordered on March 28, 1974, that the probation of the defendant be revoked. The reasons for that order are hereby set forth in detail.